UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DOUGLAS FLEMING,

    Plaintiff,

    v.

ISCO INDUSTRIES, INC.,

    Defendant.

Case No. 3:17-cv-648 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS**

Douglas Fleming ("Plaintiff") filed a Complaint against ISCO Industries, Inc. ("Defendant"), in Connecticut Superior Court on March 17, 2017. Notice of Removal, Ex. A ("Underlying Compl."), ECF No. 1-1. ISCO removed the case to this Court on April 19, 2017, Notice of Removal, ECF No. 1, and now moves to dismiss the Complaint for lack of standing, lack of personal jurisdiction, and improper venue, Mot. Dismiss, ECF No. 15.

For the following reasons, ISCO's motion to dismiss is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

Mr. Fleming owns and operates Douglas P. Fleming, LLC ("DPF"), located in Chaplin, Connecticut. Underlying Compl. ¶ 1. ISCO is a Kentucky Corporation. *Id.* ¶ 2. Mr. Fleming claims that DPF assigned its interest in this cause of action to Mr. Fleming. *Id.* ¶ 3.

Mr. Fleming claims that he and DPF secured a government contract through the National Park Service to install fire suppression systems at the stables and tennis courts in Rock Creek

1

Park in Washington, D.C. *Id.* ¶ 4. To fulfill that contract, DPF hired ISCO to provide waterline and hydrant products for the project. *Id.* Mr. Fleming claims that ISCO entered into the contract with both Mr. Fleming and DPF, and that Mr. Fleming was the guarantor. *Id.*

Mr. Fleming alleges that ISCO understood that the waterline and hydrant products would be used to fulfill a government contract, and that ISCO would be paid "when the Plaintiff and his business were paid by the National Park Service and upon acceptance of product." *Id.* ¶ 7. Mr. Fleming also claims that "ISCO represented to the Plaintiff that it understood and would comply with Federal Acquisition Regulations (FARs)." *Id.* ¶ 8.[1] Furthermore, Mr. Fleming claims that ISCO agreed that, if the National Park Service terminated the contract for convenience, ISCO would comply with applicable FARs, but that when the National Park Service did terminate for convenience, "ISCO did not follow applicable FARs to reconcile accounts with the Plaintiff's business, provide testing and quality assurance data and reclaim unused inventory from the project for credit[.]" *Id.* ¶ 10.

### B. Procedural History

Mr. Fleming filed the Underlying Complaint on March 17, 2017, in Connecticut Superior Court, claiming fraud, breach of contract, anticipatory repudiation, and tortious interference with a business expectancy. *See generally* Underlying Compl.

---

[1] The Federal Acquisition Regulations System was "established for the codification and publication of uniform policies and procedures for acquisition by all executive agencies." 48 C.F.R. § 1.101 ("Purpose"). "The FAR does not provide a private party with a private cause of action to sue a private contractor, even one employed by the government." *Wallace v. Access Self Storage Red Oak*, No. 3:17-cv-1602, 2017 WL 3017233, at *1 (N.D. Tex. June 20, 2017) (citing *Marini v. Dragados USA, Inc.*, 2012 WL 4023674, at *1 (D. Mass. Sept. 11, 2012); *Mountain State Mech. Insulation, Inc. v. Bell Constructors, LLC*, 2012 WL 2995213, at *2 (N.D. W. Va. July 23, 2012)), *report and recommendation adopted*, No. 3:17-cv-1602, 2017 WL 3016879 (N.D. Tex. July 14, 107). Here, Mr. Fleming has alleged violations of common law torts—fraud, breach of contract, anticipatory repudiation, and tortious interference with a business expectancy—with allegations that ISCO did not comply with relevant FARs as background information to the breach of contract claims.

On April 19, 2017, ISCO removed the case to this Court. Notice of Removal at 1. ISCO claimed that this Court has both federal-question and diversity jurisdiction over the matter. *Id.* at 2–5. ISCO also claimed that DPF "failed to pay ISCO at least $62,351.07 for the materials provided" under the contract at issue, and argued that Mr. Fleming's lawsuit is an attempt "to avoid payment of at least $62,351.07 to ISCO and unspecified compensatory damages, liquidated damages, and punitive damages exceeding $15,000.00." Notice of Removal ¶ 5. ISCO attached an Account Statement to its Notice of Removal, which lists the amounts that ISCO claims DPF owes ISCO. Notice of Removal, Ex. B ("Account Statement").[2]

Mr. Fleming moved to remand the case to state court, ECF No. 10, and this Court denied the motion, ECF No. 14.

---

[2] ISCO argues that this Court may consider its account statement because the account statement, along with other contract documents attached to the motion to dismiss, "'are integral' to the Complaint in that Mr. Fleming relies on and cites to the contractual relationship between the parties in his Complaint" and because the documents have been authenticated by Michelle East, a lawyer for ISCO. Mot. Dismiss at 2 n.6 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)), and citing M. East Decl., Mot. Dismiss Ex. 4). The Court agrees.

The Court will convert a motion to dismiss to a motion for summary judgment "and dispose[] of [it] as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion" if "matters outside the pleading are presented to and not excluded by the court[.]" Fed. R. Civ. P. 12(b); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154-55 (2d Cir. 2006) (explaining that Rule 12(b)(6) "assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it").

The Court may consider, however, "any written instrument attached to [the Complaint] as an exhibit or any statements or documents incorporated in it by reference." *Chambers*, 282 F.3d at 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Id.* at 153 (internal quotation marks and citation omitted).

Here, ISCO attached an Account Statement to its Notice of Removal, and the following documents to its motion to dismiss: a Credit Application and Agreement, the Terms and Conditions of Sale of the contracted products, additional Account Statements and Invoices, documents proving delivery of the products, a Declaration by Michelle East, a lawyer for ISCO, and a Complaint that ISCO filed against DPF in Kentucky. Although these documents were not attached to the Complaint, *see id.* at 152, the Court considers these documents incorporated by reference to the extent that they establish the business relationship between ISCO and DPF. *Compare Furman v. Cirrito*, 828 F.2d 898, 900 (2d Cir. 1987) (finding that partnership agreement and contract of sale by minority against majority members of a partnership where such agreements were integral parts of appellants' claim and of the record before us were properly considered on a motion to dismiss by district court); *with Glob. Network Commc'ns, Inc.*, 458 F.3d at 156 (finding reversible error where district court considered on a motion to dismiss trial testimony in an unrelated criminal proceeding and a determination by the City of New York Department of Information Technology and Telecommunications).

On July 17, 2017, ISCO filed a complaint in Kentucky, claiming that DPF breached its contract with ISCO, and seeking $69,920.25 for the amount owed under the contract. Mot. Dismiss, Ex. 5 ("Kentucky Compl."), ECF No. 15-6.

On July 19, 2017, ISCO moved to dismiss the Complaint in this Court, claiming that Mr. Fleming lacks standing to bring the case, the Court lacks personal jurisdiction over ISCO, and venue is improper. Mot. Dismiss, ECF No. 15-1. Mr. Fleming filed an objection to the motion to dismiss on August 8, 2017. Obj. to Mot. Dismiss, ECF No. 22. ISCO filed a reply brief on September 1, 2017. ECF No. 29.

Mr. Fleming also filed an amended motion for joinder, ECF No. 26, and ISCO moved to stay proceedings until the resolution of the motion to dismiss, ECF No. 31. The Court stayed all deadlines pending resolution of the motion to dismiss, including briefing on the motion for joinder. ECF No. 31.

## II. STANDARD OF REVIEW

If a federal court lacks subject-matter jurisdiction under Rule 12(b)(1), the lawsuit must be dismissed. *See* Fed. R. Civ. P. 12(h)(3); Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction[.]" *Gunn v. Minton*, 568 U.S. 251, 256 (2013); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (explaining that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies") (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "Objections to a tribunal's jurisdiction can be raised at any time[.]" *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). In determining whether a case or controversy exists, the district court will view all uncontroverted facts as true and "draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,

752 F.3d 239, 243 (2d Cir. 2014). Where jurisdictional facts are in dispute, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). "At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff." *Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010), *aff'd*, 438 Fed. App'x 27 (2d Cir. 2011), *as amended* (Sept. 23, 2011) (citing *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). The court considers the facts as they existed when Plaintiff filed the Complaint. *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

## III. DISCUSSION

### A. Dismissal for Lack of Standing

ISCO argues that Mr. Fleming does not have standing to sue ISCO "because his company is the legal entity that contracted with ISCO," and "he could not represent his limited liability company." Mot. Dismiss at 5 (citing *Caro v. Fidelity Brokerage Serv.*, No. 3:14-cv-01028 (CSH), 2015 WL 1975463 (D. Conn. 2015)). The Court agrees.

Article III, Section 2 of the United States Constitution limits federal court jurisdiction to "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial

5

process." *Spokeo*, 136 S. Ct. at 1550 (quoting *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (1998)). A party has standing when it is the proper party to bring each claim it seeks to press. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012).

A plaintiff is the proper party when he satisfies "the irreducible constitutional minimum of standing": to do so, the plaintiff must have "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of," *i.e.*, the injury must be fairly traceable to the alleged conduct. *Id.* Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)).

Mr. Fleming filed the Complaint in this case *pro se*, and he proceeds *pro se* after removal. In federal court, a *pro se* plaintiff may proceed only "with respect to his *own* claims or claims against him personally." *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 132 (2d Cir. 2009); *see also Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause."). Mr. Fleming therefore may represent only himself in his individual capacity—not as the LLC. *See Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007) ("[A] limited liability company [ ] may appear in federal court only through a licensed attorney."). In addition, DPF may not assign its rights to Mr. Fleming as a *pro se* litigant, to circumvent the rule that an LLC must be represented by counsel. *See Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983) ("In light of [ ] policy reasons for preventing a lay person from representing a corporation

in litigation, the federal courts have, in cases governed by federal law, disapproved any circumvention of the rule by the procedural device of an assignment of the corporation's claims to the lay individual."); *Lattanzio*, 481 F.3d at 140 ("Because both a partnership and a corporation must appear through licensed counsel, and because a limited liability company is a hybrid of the partnership and corporate forms . . . a limited liability company also may appear in federal court only through a licensed attorney.").

Moreover, a limited liability company provides certain protections against individual liability, but without individual liability, an individual, even the sole member of the LLC, lacks standing to bring a claim as the LLC. *See Lundstedt v. People's United Bank*, No. 3:14-cv-01479 (JAM), 2015 WL 540988, at *2 (D. Conn. Feb. 10, 2015) (explaining that "a person who transfers his or her assets to an LLC has no standing to seek damages when those assets—now belonging solely to the LLC—are harmed" and dismissing the plaintiff's claims for lack of standing because the alleged injury was "an injury to an LLC, and not an injury to plaintiff"); *Lattanzio*, 481 F.3d at 140 ("[A] sole member of a limited liability company must bear the burdens that accompany the benefits of the corporate form and may appear in federal court only through a licensed attorney.").

As an individual, Mr. Fleming has not established that he personally suffered a concrete injury in fact as a result of his role as guarantor. Mr. Fleming alleges that "ISCO entered into a contract with the Plaintiff and DPF wherein the Plaintiff was the guarantor," Compl. ¶ 4, and that when the National Park Service terminated a contract for convenience, "ISCO did not follow applicable FARs to reconcile accounts with the Plaintiff['s] business, provide testing and quality assurance data and reclaim unused inventory from the project for credit, among other ways it remained so noncompliant with applicable FARs," *id.* ¶ 10. Mr. Fleming also alleges that he and

DPF contracted with ISCO based on ISCO's representation that it would respect applicable FARs if the National Park Service terminated a contract, and that ISCO knew those representations were not true but induced Mr. Fleming and DPF to act upon them. *Id.* ¶ 11. Mr. Fleming alleges that "[t]he parties did so enter into a contract, which the Plaintiff did to his detriment and that of his business." *Id.*; *see also* Obj. to Mot. Dismiss at 1 (arguing that Mr. Fleming personally suffered damages as the guarantor of the contract and in his ability to do more work with the federal government or obtain additional bonding).

Mr. Fleming alleges that ISCO's conduct "caused damages in the form of inability to reconcile accounts pursuant to FARs, for credit for unused inventory and in other ways . . . ." Underlying Compl. ¶ 13. Mr. Fleming alleges that ISCO failed to properly perform under the contract and "instead filed a claim against the Plaintiff's bond." Compl. at 4. Mr. Fleming argues that ISCO "made it impossible to receive or be awarded similar contracts with the federal government until the present one this complaint references was properly closed out and reconciled pursuant to applicable FARs," and that by filing a claim "on the Plaintiff's bond . . . [ISCO] frustrate[d] his ability to receive work on federal projects that required the Defendant's product." *Id.*

Those allegations are based on ISCO's alleged breach of the contract formed between ISCO and DPF—not harm that ISCO committed against Mr. Fleming in his individual capacity. For example, Mr. Fleming alleges that ISCO "made it impossible to receive or be awarded similar contracts with the federal government until the present one this complaint references was properly closed out and reconciled pursuant to applicable FARs." Underlying Compl. at 3. But it was DPF, not Mr. Fleming individually, that contracted with the federal government, and presumably DPF that would contract with the government in the future. *See id.* ¶ 4 (alleging that

8

under the contract with the National Park Service, "the Plaintiff['s] business would receive waterline and hydrant products to install fire suppression systems at Rock Creek Park Stables and Rock Creek Park Tennis Court in Washington, DC. This project was a contract awarded to the Plaintiff and his business by the National Park Service."). In any event, any harm to DPF or Mr. Fleming in the future would be too speculative to confer standing sufficient to maintain this lawsuit. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient.") (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Finally, although Mr. Fleming states that he served as the guarantor for the contract between ISCO and DPF, he does not allege that he was individually damaged as a result of serving as the guarantor, or that ISCO attempted to pursue any claims against him individually or to pierce the protections of the LLC. In fact, the complaint that ISCO filed in Kentucky alleges damages against DPF, and not Mr. Fleming. *See* Kentucky Compl.

Because Mr. Fleming has not alleged that he personally suffered a concrete injury in fact as an individual, he lacks standing to sue ISCO in federal court. *See Lujan*, 504 U.S. at 560 (holding that the first requirement of standing is that the plaintiff must have "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical"). Because Mr. Fleming lacks standing to bring the claims asserted here, the Complaint must be dismissed.

### B.    Lack of Personal Jurisdiction

If the Court dismissed this Complaint for lack of standing, DPF could, in theory, bring a new lawsuit against ISCO after it retained counsel. *See Lattanzio*, 481 F.3d at 138 (allowing the

9

LLC plaintiff to obtain counsel and file an amended notice of appeal, notice of appearance, and renewed motion papers). Even if DPF decides to file again, however, the lawsuit could proceed only if ISCO waives its right to challenge the lawsuit on the basis of personal jurisdiction, because this Court does not have personal jurisdiction over ISCO.

ISCO argues that this Court does not have personal jurisdiction over it, a Kentucky corporation that contracted with DPF to provide waterline and hydrant products for DPF's project in Washington, D.C. Mot Dismiss at 1. The Court agrees.

The Court first notes that ISCO's removal of this case to federal court does not waive its 12(b)(2) motion to dismiss for lack of jurisdiction. *See Cantor Fitzgerald, L.P., v. Peaslee*, 88 F.3d 152, 157 n.4 (2d Cir. 1996) ("Removal does not waive any Rule 12(b) defenses."); *see also Holzsager v. Valley Hosp.*, 646 F.2d 792, 796 (2d Cir. 1981) ("Nor do we find any inconsistency between the Hospital's defense of lack of personal jurisdiction and its removal of the case to the federal courts followed by its efforts to have the case dismissed on other grounds.").

The amenability of a foreign corporation to suit in federal court depends on the state law where the Court sits. *See Arrowsmith v. United Press Intern*, 320 F.2d 219, 222 (2d Cir. 1963). Here, the Court must apply Connecticut's long-arm statute, which provides that "a trial court may exercise jurisdiction over a foreign defendant only if the defendant's intrastate activities meet the requirements both of [the state's long-arm] statute and of the due process clause of the federal constitution." *Thomason v. Chem. Bank*, 661 A.2d 595, 598 (Conn. 1995). If the Court has personal jurisdiction over the defendant under the long-arm statute, the Court will consider whether jurisdiction would comport with the due process clause of the United States Constitution. *See Licci ex rel. Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013); *see also Lombard Bros., Inc. v. General Asset Management Co.*, 460 A.2d 481, 483-84

(Conn. 1983) (explaining that the Court need only address due process considerations if it determines that jurisdiction exists under the long-arm statute).

Connecticut's long arm statute provides that a foreign corporation will be amenable to suit in this state based on a cause of action arising out of: (1) a contract made or to be performed in Connecticut; (2) business solicited in the state; (3) the production, manufacture, or distribution of goods with the reasonable expectation that they will be used or consumed in the state; or (4) tortious conduct in the state. Conn. Gen. Stat. § 33-929(f). It does not require "that a party transact business within the state to be subject to suit nor does it require a causal connection between the plaintiff's cause of action and the defendant's presence in the state." *Tomra of N. Am. Envt'l. Prods. Corp.*, 4 F. Supp. 2d 90, 93 (D. Conn. 1998) (footnote omitted) (citing *Thomason*, 661 A.2d 595, 602-04, and *Lombard Bros., Inc.*, 460 A.2d at 485–86). The statute instead requires "a nexus between the cause of action alleged and the conduct of the defendant within the state." *Donner v. Knoa Corp.*, No. 3:01-cv-2171 (JCH), 2002 WL 31060366, at *3 (D. Conn. 2002).

The Court considers several factors "to determine whether a contract can serve as the basis for personal jurisdiction: (1) 'whether the defendant entered into an ongoing contractual relationship with a Connecticut-based plaintiff; (2) whether the contract was negotiated in Connecticut; (3) whether, after executing a contract with the defendant, the defendant visited Connecticut to meet with the plaintiff or communicated with the plaintiff as part of the contractual relationship; and (4) whether the contract contains a Connecticut choice-of-law provision.'" *Dunne v. Doyle*, No. 3:13-cv-1075 (VLB), 2014 WL 3735619, at *7 (D. Conn. July 28, 2014) (quoting *Nusbaum & Parrino, P.C. v. Collazo De Colon*, 618 F. Supp. 2d 156, 161 (D. Conn. 2009)). ISCO argues that here, the Court lacks personal jurisdiction over ISCO because

"[t]he contract in this matter was made in Kentucky and performed between Kentucky and Washington, D.C." Mot. Dismiss Memo. at 7. ISCO also argues that the contract did not arise out of any solicitation of business in Connecticut, and that Plaintiff has not alleged that ISCO committed a tort in Connecticut. *Id.* at 8–10. The Court agrees.

Although ISCO did enter into an agreement with a Connecticut-based plaintiff, the contract was made in Kentucky, intended to be performed in Washington, D.C., and contains a Kentucky choice-of law provision. First, the contract itself states that it was made in Kentucky, and that Kentucky law will govern disputes. Mot. Dismiss, Ex. 2. The agreement provides:

> Governing Law: These terms and conditions, and any order subject thereto, shall be deemed to have been entered into in the Commonwealth of Kentucky, and all matters arising out of or relating to it shall be governed by and construed in accordance with the laws of the United States and the Commonwealth of Kentucky without giving effect to principles of conflicts of laws.

*Id.* A choice of law provision, while not the sole factor in the Court's personal jurisdiction analysis, does indicate where the parties intended that the contract be performed. *See, e.g.*, *Planned Furniture Promotions, Inc. v. City Antique, Inc.*, No. 3:14-cv-0279 (MPS), 2014 WL 5481438, at *4 (D. Conn. Oct. 29, 2014) (determining that the court lacked personal jurisdiction over the defendant where, among other factors, it was "undisputed that the [contract] contains an Oregon choice of law provision, and [the plaintiff] has not pointed to any other language in the SPCA that would support its argument that the contract expressly contemplated or required performance in Connecticut"); *Johnsen, Fretty & Co., LLC v. Lands S., LLC*, 526 F. Supp. 2d 307, 311–312 (D. Conn. 2007) (finding that Connecticut choice of law provision in contract indicated that the parties contemplated "that the contract would be performed in Connecticut"). The Kentucky choice of law provision in the contract at issue here indicates that the contract was not made in, or intended to be performed in, Connecticut.

In addition, Mr. Fleming has not alleged that the contract was performed in Connecticut, but rather that it was meant to be performed in Washington, D.C. Compl. ¶ 4. ISCO also submitted invoices that the products were in fact delivered to Washington. *See generally* Mot. Dismiss, Ex. 3 ("Invoice"). Finally, ISCO submitted a declaration by Michelle East, an attorney in ISCO's legal department, who attested that ISCO is a Kentucky corporation that has no physical presence or property in Connecticut, and that it has not consented to jurisdiction in Connecticut. Mot. Dismiss, Ex. 4 ("East Decl.").

To the extent that Mr. Fleming relies on his own residency in Connecticut as a basis for personal jurisdiction over ISCO, he must show that "(1) the contract expressly contemplated or required performance in Connecticut; or (2) the plaintiff had actually performed its obligations in Connecticut and such performance was the most substantial part of the obligations to be performed under the contract." *Planned Furniture Promotions, Inc.*, 2014 WL 5481438, at *3 (quoting *General Star Indemnity Co. v. Anheuser-Busch Companies, Inc.*, No. 3:97-cv-2542 (EBB), 1998 WL 774234, at *4 (D. Conn. Aug. 24, 1998), *amended on reconsideration in part*, 28 F. Supp. 2d 71 (D. Conn. 1998), and *aff'd*, 199 F.3d 1322 (2d Cir. 1999)). Here, the Complaint alleges that the contract contemplated performance in Washington, and ISCO's invoices show that ISCO delivered the products to Mr. Fleming in Washington. *See* Compl. ¶ 4; s*ee generally* Invoice (listing shipping address in Washington).

Based on the record at this stage, the Court finds that Mr. Fleming has not made a *prima facie* showing that the Court has personal jurisdiction over ISCO. ISCO's motion to dismiss the Underlying Complaint therefore is granted. Moreover, because the Court has dismissed the Complaint for lack of standing and lack of personal jurisdiction, the Court will not address

ISCO's argument that the District of Connecticut is not the most convenient forum for the litigation. Finally, the stayed motion for joinder is now moot.

## IV. CONCLUSION

For all of the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**.

The Clerk of the Court is directed to close this case.

SO ORDERED at Bridgeport, Connecticut, this 2nd day of March, 2018.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE
